UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

---

CECIL SHIELDS,

                        Plaintiff,

            v.

NYC HEALTH & HOSPITALS CORPORATION
DBA/NYC HEALTH + HOSPITALS., JAMES KEYS,
MARIE ANTROBUS, KRYSTAL LEWIS, MARIA
MENDEZ, AND BLANCHE GREENFIELD, THE CITY
UNIVERSITY OF NEW YORK AND STUART SUSS,

                        Defendant.

**MEMORANDUM AND ORDER**
18-cv-3889 (LDH)

---

LaSHANN DeARCY HALL, United States District Judge:

    Plaintiff Cecil Shields, proceeding pro se, brings the instant action against his former employer, NYC Health & Hospitals Corporation ("NYC Health"), and, in their respective official capacities, James Keys, Marie Antrobus, Krystal Lewis, Maria Mendez, and Blanche Greenfield for discrimination, retaliation, and hostile work environment under Title VII of the Civil Rights Act of 1964 ("Title VII"); discrimination, and failure to accommodate under the Americans with Disabilities Act ("ADA"), and the Rehabilitation Act; and related claims under New York State Human Rights Law ("NYSHRL") and New York City Human Rights Law ("NYCHRL").[1] Defendants move pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure to dismiss the second amended complaint in its entirety.

---

[1] In his opposition to Defendants' motion to dismiss, Plaintiff withdraws his Family and Medical Leave Act ("FMLA") and Age Discrimination in Employment Act causes of action. (Pl.'s Aff. Opp. Def.'s Mot. Dismiss ("Pl.'s Opp.") 5, ECF No. 30) ("Plaintiff does not object to the dismissal of the claims relating to FMLA interference and age discrimination."). Pursuant to Federal Rule of Civil Procedure 41(a)(2), these claims are dismissed.

# BACKGROUND[2]

Plaintiff, a 68-year-old man, began working full time as a junior clinical business analyst in the Clinical Information Systems Department (the "Department") at NYC Health's Coney Island Hospital on November 16, 2015. (Sec. Am. Compl. ("Compl.") at 7-8, ECF No. 17.) Plaintiff was supervised by Ms. Antrobus. (*Id* at 7.) Shortly after Plaintiff was hired, Ms. Belasoto and Ms. Lewis joined the Department. (*Id*. at 8.) Ms. Belasoto and Ms. Lewis are women in their "early mid-20's" and "about 35-early 40's," respectively. (*Id*.) In December of 2015, Ms. Antrobus reassigned Plaintiff's tasks to Ms. Belasoto. (*Id.*) At that time, Plaintiff was told that he would be given a "written Functional Job Description . . . detailing [his] task and assignment," but none was ever provided. (*Id*.) Plaintiff maintains that, as a result of Defendants' failure to provide the job description, he was left "feeling isolated." (*Id*.)

The following year, Plaintiff made repeated requests to receive electronic health records program training, a requirement for his position. (Pl.'s Opp. 6-7.) Plaintiff's requests for the training were denied. (*Id*. 7.) Sal Garcia, Plaintiff's co-worker, was given the training. (Pl.'s Opp. 7, 11, 16.)

On October 4, 2016, Plaintiff had an episode of vertigo, and, as a result, reported to work 15–30 minutes late. (Compl. at 8-9.) When Plaintiff arrived, he was confronted by Ms. Antrobus who, "yelled and berated him" in front of his coworkers, sent him home, and docked him one day's pay. (*Id*.) Plaintiff maintains that Ms. Antrobus was aware at the time that he

---

[2] The following facts are taken from the complaint and are assumed to be true for the purpose of this memorandum and order. Additionally, in light of Plaintiff proceeding pro se, the facts of this case are also taken from his opposition to the instant motion to the extent that they are consistent with the allegations in his complaint. *See, e.g.*, *Nielsen v. Rabin*, 746 F.3d 58, 61 (2d Cir. 2014) (reversing denial of leave to amend where pro se plaintiff's complaint would state a claim for relief if it were amended to include the allegations in her opposition to defendant's motion to dismiss).

suffered from vertigo.  (*Id*. at 8.)  According to Plaintiff, he then began to feel "helpless, anxious and depressed."  (*Id*. at 9.)  That evening, Plaintiff sought medical attention and was diagnosed with workplace depression and anxiety.  (*Id.*)  A few days later, Ms. Antrobus gave Plaintiff a written write-up, which threatened further disciplinary action for tardiness.  (*Id*.)

Plaintiff later filed a harassment complaint with the "OSA Union."[3]  (*Id*.)  In that complaint, Plaintiff claimed to have been continuously ill-treated; harassed through verbal intimidations; given unrealistic assignments and instructions to mislead a medical provider; required to submit daily reports; and subjected to inappropriate physical touching by Ms. Lewis.  (*Id.* at 9-10.)

In February 2017, Plaintiff complained that his overtime payments were delayed and was told that Ms. Antrobus would "look into it."  (Compl. at 10-11.)  On an unspecified date prior to March 1, 2017, Plaintiff was assigned to work at NYC Health's headquarters in Manhattan.  (*Id*. at 11.)  On March 1, 2017, Plaintiff was again diagnosed with work-related depression and anxiety.  (*Id*.)  That same month, Plaintiff began treatment and was granted unpaid leave pursuant to the Family Medical Leave Act.  (*Id.*)  On May 1, 2017, Plaintiff requested, as an accommodation, a reassignment in an effort to separate from Ms. Antrobus and Ms. Lewis.  (*Id.*)  Keys, NYC Health's EEO Director, initially refused to consider Plaintiff's request.  (*Id*.)  On May 3, 2017, Plaintiff filed an internal EEO complaint with Keys alleging hostile work environment and disparate treatment.  (Pl.'s Opp. 10.)  After Plaintiff complained to his OSA Union representative about Keys's failure to act on Plaintiff's accommodation request, on May 15, 2017, Keys verbally offered to allow Plaintiff to return to work at Coney Island Hospital.

---

[3] The Court construes Plaintiff's reference to the OSA Union as referring to the Organization of Staff Analysts Union.  *See* https://www.osaunion.org/who/main.html

3

(*Id*.)  On May 30, 2017, Keys verbally rescinded the offer.  (*Id*. at 11.)  On June 1, 2017, Plaintiff's request for reassignment was formally denied.  (*Id.*)  Plaintiff claims that two coworkers, Mr. Zuk and Ms. Outlaw, were allowed to work at Coney Island Hospital.  (*Id*.)

On August 8, 2017, Plaintiff filed a discrimination complaint with the New York State Department of Human Rights ("DHR"), which was cross-filed with the EEOC.  (Compl. at 13.)  Later, Plaintiff met with his union representative and Keys, during which he was told that Keys would again review his reassignment request, as well as investigate Plaintiff's internal EEO complaint and the DHR complaint.  (*Id*.)  On December 14, 2017, Mr. Johnson, Director of Labor Relations at NYC Health, notified Plaintiff of his reassignment to Coney Island Hospital.  (*Id.* at 14.)  However, on or about February 5, 2018, Plaintiff was instead told to report to work at Woodhull Hospital under the supervision of Ms. Antrobus and Ms. Lewis.  (*Id.*)  Plaintiff's consulting lawyer requested clarification from Greenfield, NYC Health's Chief Employment Counsel, and was told that Plaintiff was obligated to return to work at Woodhull Hospital or face disciplinary action up to and including termination.  (*Id.* at 14-15.)  Also on or about February 5, 2018, Plaintiff received a "No Probable Cause" determination from DHR.  (*Id*. at 15.)  On March 20, 2018, Plaintiff requested an EEOC review of DHR's determination, and thereafter received a right-to-sue letter.  (*Id.*)  Subsequently, on March 30, 2018, Plaintiff met with Keys who informed Plaintiff that his absence from work since March 2017 had been approved "as a form of reasonable accommodation."  (*Id.*)  Keys informed Plaintiff that upon his return to work, he was to report to Ms. Antrobus at Woodhull Hospital.  (*Id.*)  Plaintiff's doctor advised him not to return to work at that time, but stated that Plaintiff would be medically cleared on June 11, 2018.  (*Id.*)

4

On June 4, 2018, Plaintiff received a letter from Keys disapproving his absence through June 11, and warning of disciplinary action if Plaintiff did not return to work the next day. (*Id.* at 15-16.) On June 8, 2018, Plaintiff filed the original complaint in the instant action. (Pl.'s Opp. 14; *see also* ECF No. 1.) On June 15, 2018 Plaintiff received an email from Maria Mendez, Assistant Director of Human Resources at NYC Health, informing him that his employment was terminated. (Compl. at 16.)

## STANDARD OF REVIEW

To withstand a Rule 12(b)(6) motion to dismiss, a complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is facially plausible when the alleged facts allow the court to draw a "reasonable inference" of defendants' liability for the alleged misconduct. *Id*. While this standard requires more than a "sheer possibility" of defendants' liability, *id*., "[i]t is not the [c]ourt's function to weigh the evidence that might be presented at trial" on a motion to dismiss. *Morris v. Northrop Grumman Corp.*, 37 F. Supp. 2d 556, 565 (E.D.N.Y. 1999). Instead, "the court must merely determine whether the complaint itself is legally sufficient, and, in doing so, it is well settled that the court must accept the factual allegations of the complaint as true." *Id*. (citations omitted).

Moreover, where, as here, a plaintiff is proceeding pro se, his pleadings "must be construed liberally and interpreted to raise the strongest arguments that they suggest." *Sykes v. Bank of Am.*, 723 F.3d 399, 403 (2d Cir. 2013) (quoting *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006)). A pro se complaint, "however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Boykin v. KeyCorp*,

521 F.3d 202, 213–14 (2d Cir. 2008) (quoting *Erickson v. Pardus*, 55 U.S. 89, 94 (2007) (per curiam)).  This rule is "particularly so when the pro se plaintiff alleges that [his] civil rights have been violated." *Sealed Plaintiff v. Sealed Defendant*, 537 F.3d 185, 191 (2d Cir. 2008) (citing *McEachin v. McGuinnis*, 357 F.3d 197, 200 (2d Cir. 2004)).  Still, "even pro se plaintiffs asserting civil right claims cannot withstand a motion to dismiss unless their pleadings contain factual allegations sufficient to raise a 'right to relief above the speculative level.'" *Jackson v. NYS Dep't of Labor*, 709 F. Supp. 2d 218, 224 (S.D.N.Y. 2010) (citing *Twombly*, 550 U.S. at 555).

## DISCUSSION

### I. Timeliness of Federal Claims

To be timely, a plaintiff's discrimination claim must be filed within 180 days after the alleged unlawful employment action occurs, unless an exception applies.  42 U.S.C. § 2000e-5(e)(1).  Because New York is a so-called deferral state with a fair employment agency, an employment discrimination claim under Title VII or the ADA must be filed with the EEOC within 300 days of the alleged discrimination.  *Pikulin v. City Univ. of New York*, 176 F.3d 598, 599 (2d Cir. 1999) (citing 42 U.S.C. § 2000e-5(e)(1)); *see also Harris v. City of New York*, 186 F.3d 243, 248 fn. 2 (2d Cir. 1999) (noting that the existence of its State Division of Human Rights ("DHR") makes New York a so-called deferral state for Title VII (and hence ADA) purposes, and thus the 300–day rule applies).

Defendant contends that because Plaintiff's discrimination complaint was filed with the DHR on August 8, 2017, any claim for discrimination or retaliation based on a discrete act that occurred prior to October 12, 2016 (the date 300 days prior) is time-barred.  (Mem. Law Supp. Defs.' Mot. Dismiss ("Defs.' Mot.") 8-9, ECF No. 29.)  The Court agrees.

Plaintiff's discrimination and retaliation claims are dismissed as time-barred to the extent that they are predicated on the October 4, 2016 reprimand; the December 2015 reassignment of Plaintiff's duties; and the allegations of inappropriate physical contact in June 2016. Of course, to the extent this conduct is alleged with respect to Plaintiff's hostile-work-environment claim, the statute of limitations does not act as a bar because other contributing conduct is alleged to have occurred within the limitations period. *See Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 117 (2002) ("Provided that an act contributing to the claim occurs within the filing period, the entire time period of the hostile environment may be considered by a court for the purposes of determining liability.").

## II.     Discrimination Claims

### A.     Title VII

A Title VII claim is analyzed using a burden-shifting framework established by the Supreme Court in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). At the first step of the *McDonnell* analysis, a plaintiff bears the burden of establishing a prima facie case of employment discrimination by showing that: (1) he belongs to a protected class; (2) he was qualified for the position he held; and (3) he suffered an adverse employment action that (4) occurred under circumstances giving rise to an inference of discrimination. *Holcomb v. Iona Coll.*, 521 F.3d 130, 138 (2d Cir. 2008). If the plaintiff makes out a prima facie case, the burden of production shifts to the defendant, who must proffer a legitimate, nondiscriminatory reason for the challenged employment action. *Graham v. Long Island R.R.*, 230 F.3d 34, 38 (2d Cir. 2000). However, to survive a motion to dismiss, a plaintiff "need not plead a prima facie case of discrimination[.]" *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 515 (2002). Rather, a plaintiff must allege facts that plausibly support "that the plaintiff is a member of a protected class, was

7

qualified, suffered an adverse employment action[;] and [offer] at least minimal support for the proposition that the employer was motivated by discriminatory intent." *Littlejohn v. City of New York*, 795 F.3d 297, 311 (2d Cir. 2015).

Defendants do not challenge the first two elements of Plaintiff's discrimination claim. Defendants contend, instead, that Plaintiff has not sufficiently pleaded facts that would plausibly support the remaining two elements: (1) that Plaintiff suffered an adverse employment action; and (2) that NYC Health was motivated by discriminatory intent. (Defs.' Mot. 10-12.)

"A plaintiff sustains an adverse employment action if he or she endures a materially adverse change in the terms and conditions of employment." *Vega v. Hempstead Union Free Sch. Dist.*, 801 F.3d 72, 85 (2d Cir. 2015). In other words, for his claim to be actionable, Plaintiff must allege conduct that results in "a materially significant disadvantage with respect to the terms of [plaintiff's] employment." *Williams v. R.H. Donnelley, Corp.*, 368 F.3d 123, 128 (2d Cir. 2004) (internal quotations omitted).

Even under the most liberal reading of the complaint, Plaintiff's allegations here can be fairly characterized as everyday workplace grievances that are simply non-actionable. *See La Grande v. DeCrescente Distrib. Co.*, 370 F. App'x 206, 211 (2d Cir. 2010) ("Everyday workplace grievances, disappointments, and setbacks do not constitute adverse employment actions within the meaning of Title VII.") (citations omitted). That is, delays in the payment of overtime pay, reprimands, and name calling typically do not alter the terms and conditions of one's employment and they are not pleaded to have done so here. *See Miller v. N.Y.C. Health & Hosp. Corp.*, No. 00-CV-140, 2005 WL 2022016, at *6 (S.D.N.Y. Aug. 22, 2005) (finding that a plaintiff failed to show that a workers' compensation payment delayed by several months but ultimately paid was "anything more than a mere inconvenience"), *aff'd sub nom.*, *Miller v.*

*N.Y.C. Health & Hosps. Corp.*, 198 F. App'x 87 (2d Cir. 2006); *Weeks v. New York State*, 273 F.3d 76, 86 (2d Cir. 2001) ("It hardly needs saying that a criticism of an employee . . . is not an adverse employment action."). Likewise, unrealistic work assignments, and requiring Plaintiff to submit daily reports are not sufficiently adverse to the conditions of employment to support a discrimination claim. *See Galabya v. New York City Bd. of Educ.*, 202 F.3d 636, 640 (2d Cir. 2000) ("To be materially adverse a change in working conditions must be more disruptive than a mere inconvenience or an alteration of job responsibilities. . . . A materially adverse change might be indicated by a termination of employment, a demotion evidenced by a decrease in wage or salary, a less distinguished title, a material loss of benefits, significantly diminished material responsibilities, or other indices . . . unique to a particular situation.") (internal quotations and citations omitted).

   The complaint does include two allegations that could plausibly be construed as adverse employment actions—the denial of training opportunities and the imposition of reporting requirements not imposed on other employees. *See La Grande*, 370 F. App'x at 211 (finding denial of training may constitute an adverse employment action "particularly if the training was 'part of the job'"); *see also Almontaser v. N.Y.C. Dep't of Educ.*, No. 13-CV-5621, 2014 WL 3110019, at *6 (E.D.N.Y. July 8, 2014) (noting that some courts have found that an adverse employment action could lie where a plaintiff is required to submit his lesson plans to his supervisor and the plaintiff's peers had no such requirement). However, as pleaded, these allegations are nonetheless non-actionable because they are not accompanied by any allegation that might support the conclusion that they occurred under circumstances giving rise to an inference of discrimination.

9

For example, Plaintiff does not allege that Defendant made any comments that might suggest that gender played a role in his denial of training opportunities or the imposition of stringent reporting requirements. *See Littlejohn v. City of New York*, 795 F.3d 297, 312 (2d Cir. 2015) ("An inference of discrimination can arise from . . . [an] employer's criticism of the plaintiff's performance [in degrading terms related to the plaintiff's protected class]; or its invidious comments about others in the employee's protected group[.]") (internal quotations omitted). Likewise, Plaintiff has failed to identify any comparator—i.e., a person outside of his protected class who was similarly situated to himself—who was not subjected to any alleged wrongdoing. *See Raspardo v. Carlone*, 770 F.3d 97, 126 (2d Cir. 2014) (stating that an inference of discrimination can be found where the plaintiff shows "that the employer treated him or her less favorably than a similarly situated employee outside of the [plaintiff's] protected group.") (internal quotations omitted). Indeed, the only purported comparator offered by Plaintiff is Sal Garcia, who Plaintiff does not allege falls outside of Plaintiff's protected class, and therefore cannot serve as a comparator to support an inference of discrimination. Accordingly, Plaintiff's Title VII gender discrimination claim must be dismissed.

**B.  Disability Discrimination Claims**

To state a claim for discrimination under the ADA, a plaintiff must allege that his employer took adverse action against him because of a qualifying disability. *See Lyons v. Legal Aid Soc'y*, 68 F.3d 1512, 1514–15 (2d Cir. 1995). Alternatively, a plaintiff may state an ADA claim under a theory of failure-to-accommodate, by alleging, among other things, that "[he] is a person with a disability under the meaning of the ADA." *Dooley v. JetBlue Airways Corp.*, 636 F. App'x 16, 18 (2d Cir. 2015) (summary order). Under either theory, a plaintiff must allege that

he suffers from an impairment that "substantially limits one or more major life activities." *See Buckley v. Consol. Edison Co.*, 155 F.3d 150, 154 (2d Cir. 1998).

Defendants contend Plaintiff's ADA and Rehabilitation Act claims should be dismissed because Plaintiff has failed to sufficiently allege a disability under these statutes. (Defs.' Mot. 18-19.) The Court agrees.

Plaintiff maintains that his vertigo, depression, and anxiety qualify as disabilities under the ADA. (Pl.'s Mot. 8.) With respect to Plaintiff's vertigo, Defendants maintain that it does not "substantially limit" any major life activity to qualify under the ADA. (Defs.' Mot. 18 (quoting 42 U.S.C. § 12102(1)(A) (stating that the term "disability" means a physical or mental impairment that substantially limits one or more major life activities of such individual.") "[M]ajor life activities include, but are not limited to, caring for oneself, performing manual tasks, seeing, hearing, eating, sleeping, walking, standing, lifting, bending, speaking, breathing, learning, reading, concentrating, thinking, communicating, and working." 42 U.S.C. § 12102(2)(A). "The term substantially limits shall be construed broadly in favor of expansive coverage, . . . and is not meant to be a demanding standard." *Parada v. Banco Indus. De Venezuela, C.A.*, 753 F.3d 62, 68 fn. 3 (2d Cir. 2014) (internal quotations omitted). "Factors to consider in determining whether a major life activity is substantially limited include: the nature and severity of the impairment; its duration or expected duration; and the existence of any actual

or expected permanent or long-term impact." *Capobianco v. City of New York*, 422 F.3d 47, 57 (2d Cir. 2005); *see also* 29 C.F.R. § 1630.2(j).

Absent from the complaint is any allegation indicating what, if any, activity is substantially limited by Plaintiff's vertigo. (*See generally*, Compl.; Pl.'s Opp.) As such, Plaintiff's vertigo cannot be alleged to constitute a disability under the ADA.

Next, Defendants contend that Plaintiff's job-related depression and anxiety are not recognized disabilities under the ADA or the Rehabilitation Act. (Defs.' Mot. 19.) The Court is unwilling to find, as Defendants contend, that such conditions categorically do not qualify as disabilities as a matter of law. However, the Court agrees with Defendants that, under the facts as alleged in this case, Plaintiff's anxiety and depression are not qualifying conditions. Plaintiff does not allege that these conditions substantially limited his ability to work generally. Instead, Plaintiff alleges only that his purported disabilities prevented him from working with Ms. Antrobus and Ms. Lewis. (Compl. at 11.) This is not the sort of substantial impairment to Plaintiff's ability to work, or engage in any other major life activity, contemplated by the ADA. *See Potter v. Xerox Corp.* 1 F. App'x 34, 37 (2d Cir. 2001) (summary order) (finding that where a plaintiff's "disability only prevents him from working in one position—the position he held under his last supervisor—[his] ability to work is not substantially impaired.")

Even if Plaintiff had properly alleged a disability under the ADA, Plaintiff's discrimination claim must be dismissed because he has not adequately alleged that his termination was because of his vertigo, anxiety, or depression. Indeed, according to Plaintiff's own allegations, Plaintiff was terminated because he engaged in protected activities—not because of his medical conditions. (Compl. at 16.)

Accordingly, Plaintiff has not plausibly alleged that he is an individual that is disabled, or that he was terminated because of his disability, as required to state a claim under the ADA.

### C. Retaliation Claims under Title VII and the ADA

Plaintiff presses a claim for retaliation under Title VII and the ADA predicated on his June 18, 2018 termination of employment.[4]  In support of his claim, Plaintiff alleges that he engaged in the following protected activities:  (1) an email to Antrobus and her boss requesting redress for an October 4, 2016 incident; (2) his October 17, 2016 complaint filed with the OSA Union concerning ill-treatment, harassment, and inappropriate physical contact from Ms. Lewis; (3) his May 3, 2017 internal EEO Complaint; (4) his August 8, 2017 DHR complaint; (5) his February 21, 2018 request for EEOC review of the DHR's No Probable Cause determination; (6) the EEOC right-to-sue letter he received on March 20, 2018; and (7) his federal complaint filed on June 8, 2018.  (Pl.'s Opp. 13-14.)  Defendants maintain that Plaintiff's claim should be dismissed because, among other things, Plaintiff has failed to plead a causal relationship between any of these purported protected activities and his termination.  (Defs.' Mot. 13.)  Yet again, the Court agrees.

To survive a motion to dismiss a claim for retaliation, a plaintiff must allege facts that plausibly support an inference that:  "(1) [the] defendants discriminated—or took an adverse employment action—against him, (2) 'because' he has opposed any unlawful employment practice." *Vega*, 801 F.3d at 90 (quoting 42 U.S.C. § 2000e-3(a)).  A plaintiff can satisfy the

---

[4] Plaintiff also purports to bring his retaliation claim based on Defendants alleged failure to grant his request for the accommodation of his alleged disability.  However, the Second Circuit has made clear that the denial of an accommodation is not itself an adverse employment action providing a basis for a claim for discrimination.  *See Fox v. Costco Wholesale Corp.*, 918 F.3d 65, 72 (2d Cir. 2019) (finding plaintiff's request for accommodation, even if related to his disability, did not rise to the level of a material adverse employment action); *Sosa v. N.Y.C. Dep't of Educ.*, 368 F. Supp. 3d 489, 496 (E.D.N.Y. 2019) ("While courts may consider the underlying conduct of an alleged failure to accommodate, a failure to accommodate, by itself, is not sufficient for purposes of establishing an adverse employment action.").

13

causal requirement, by pleading facts that show a direct connection between the protected activity and the alleged discrimination. *Id.* at 87. Plaintiff fails to do so here. The court may infer a causal link where the adverse employment action occurred in a sufficiently close period of time that an inference of discrimination would be reasonable. *Id* at 90 (collecting cases). Although the Second Circuit has not adopted a hard and fast rule regarding the temporal proximity of an adverse action to a protected activity, it has made clear, consistent with Supreme Court precedent, that it must be "very close." *Perry v. NYSARC, Inc.*, 424 F. App'x 23, 26 (2d Cir. 2011) (stating that the Supreme Court has ruled that the alleged protected activity and retaliation must occur "very close in time," and finding that eleven months between the plaintiff's protected activity and the alleged retaliation was too remote.) Courts in this circuit have consistently found, as the Court does here, that a period of greater than three months is too attenuated to provide a basis to infer retaliation. *Moore v. Verizon*, No. 13-cv-6467, 2016 WL 825001, at *15 (S.D.N.Y. Feb. 5, 2016) (collecting cases). With the exception of Plaintiff's filing of the instant action, the alleged protected activities occurred no less than four months before, and as great as two-and-a-half years before his termination. These temporal gaps render the allegations insufficient to support an inference of discrimination.[5]

Plaintiff's allegations concerning the filing of the instant action fare no better. Plaintiff filed the complaint in this case on June 8, 2018, just days before his termination on June 15, 2018, and well within the three-month temporal window that could potentially allow for an inference of discrimination. (ECF No. 1.) However, Defendants Keys and NYC Health were

---

[5] Plaintiff also maintains that Defendants retaliated against him based on his receipt of a right-to-sue letter on March 20, 2018. (Pl.'s Opp. 14.) Receipt of a right-to-sue letter, however, does not constitute a protected activity as a matter of law. *See Clark Cty. Sch. Dist. v. Breeden*, 532 U.S. 268, 273 (2001) (finding "utterly implausible" the suggestion that receiving a right-to-sue letter is a protected activity).

14

not served the complaint until June 22, 2018, and June 28, 2018, respectively. (*See* ECF No 10.) That is, those two Defendants were served after Plaintiff's termination. And, none of the other Defendants were served prior to Plaintiff's termination. Fatally, there are no allegations that might suggest that, absent service, any Defendant was otherwise aware of the complaint. It is well established that a defendant's knowledge of a plaintiff's participation in a protected activity is necessary to establish a prima facie retaliation claim. *See Summa v. Hofstra Univ.*, 708 F.3d 115, 125–26 (2d Cir. 2013) ("Nothing more is necessary than general corporate knowledge that the plaintiff has engaged in a protected activity.") (quotations omitted). Accordingly, Plaintiff's retaliation claims must be dismissed.[6]

### D.   Hostile Work Environment

To establish a hostile-work-environment claim under Title VII, a plaintiff must allege that "the workplace is permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." *Littlejohn*, 795 F.3d at 320-21 (quoting *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993)). A hostile work environment has both objective and subjective components. In other words, "the conduct complained of must be severe or pervasive enough that a reasonable person would find it hostile or abusive, and the victim must subjectively perceive the work environment to be abusive." *Id.* In assessing the sufficiency of the allegations, a court must "consider the totality of the circumstances, including 'the frequency of

---

[6] In addition to the temporal proximity issue outlined above, to the extent that Plaintiff predicates his ADA retaliation claim on his October 17, 2016 OSA Union complaint or his May 3, 2017 internal EEO complaint, such a contention fails. Complaints regarding gender discrimination would not provide Defendants with notice that their conduct is potentially violative of any anti-disability discrimination laws. *See Bamba v. Fenton*, 758 F. App'x 8, 12–13 (2d Cir. 2018) (summary order) (affirming dismissal where employer would not reasonably understand that an internal complaint was directed at conduct prohibited by Title VII).

the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance.'" *Id.* (quoting *Harris*, 510 U.S. at 21).

Defendants urge the Court to dismiss Plaintiff's hostile-work-environment claim arguing that the complaint only "states generally that he was subjected to verbal intimidation, [subjected to] unrealistic work task[s], instructed to deceive a medical provider[,] and subjected to inappropriate touching on two occasions," which, according to Defendants, does not amount to the severe or pervasive conduct proscribed under law. (Def. Mot. 15.) For the most part, the Court agrees, with one glaring exception – Plaintiff's allegations of inappropriate touching.

Plaintiff alleges that he was subjected to sexual touching in June 2016—four months outside of the limitations period. (Defs.' Mot., Ex. D at 3, ECF No. 28-4.) Thus, this allegation is timely only if another act contributing to his hostile-work-environment claim occurred during the filing period. *See Nat'l R.R. Passenger Corp.*, 536 U.S. at 117 ("Provided that an act contributing to the claim occurs within the filing period, the entire time period of the hostile environment may be considered by a court for the purposes of determining liability."). As set out above, however, there is no other conduct cognizable to allow the Court to reach the alleged unlawful touching. It is therefore time-barred, and Plaintiff's hostile-work-environment claim must be dismissed.[7]

---

[7] It should not go without mention, however, that Defendants lumping of unwanted physical conduct with other minor conduct is curious at best. Plaintiff alleges that Ms. Lewis inappropriately touched him on two occasions while he sat at his desk, and, that he was subjected to "defendant's unwelcome physical contact." (Pl.'s Opp. 12; Compl. 9.) In evaluating a pro se complaint, a court should interpret the plaintiff's allegations to raise the "strongest claims that they suggest." *DiPetto v. U.S. Postal Serv.*, 383 F. App'x 102, 103 (2d Cir. 2010) (emphasis and internal modifications omitted) (quoting *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474–75 (2d Cir. 2006)). Here, while the full extent of the physical contact between Plaintiff and Ms. Lewis is unclear, Plaintiff's allegations at least suggest that it was sexual in nature, and unwanted. On these facts—i.e. where a pro se plaintiff alleges that a co-worker of the opposite sex made unwelcome sexual advances towards him—the Court presumes that the alleged conduct occurred because of Plaintiff's sex.

\* \* \*

Having dismissed all of Plaintiff's federal claims, the Court declines to exercise supplemental jurisdiction over Plaintiff's state and city law claims pursuant to 28 U.S.C. § 1367(c)(3). Those claims are therefore dismissed without prejudice for lack of subject-matter jurisdiction.

## CONCLUSION

For the foregoing reasons, Defendants' motion to dismiss is GRANTED and the complaint is dismissed in its entirety. Because Plaintiff has already been given an opportunity to amend, the complaint is dismissed with prejudice.

SO ORDERED.

Dated: Brooklyn, New York  /s/ LDH
March 30, 2020  LaSHANN DeARCY HALL
United States District Judge